**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| DARNELL MATTHEWS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1110 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13, 14 |
| | : | | |
| ANDREW M. SAUL, | : | | |
| Commissioner of Social Security, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING PLAINTIFF'S MOTION FOR JUDGMENT OF REVERSAL; DENYING DEFENDANT'S
MOTION FOR JUDGMENT OF AFFIRMANCE**

Plaintiff Darnell Matthews applied for disability insurance benefits and supplemental

security income in 2014.  After an Administrative Law Judge ("ALJ") rejected his application,

Mr. Matthews sought review of that decision from this Court.  On March 11, 2020, Magistrate

Judge Robinson found that the ALJ failed to properly apply the treating physician rule and

recommended that this Court remand the action to the Social Security Administration ("SSA")

for the application of the rule and findings in accordance therewith.  *See* Report &

Recommendation ("R&R"), ECF No. 20.  This Court agrees with Magistrate Judge Robinson's

conclusion that the ALJ failed to adequately explain why he accorded aspects of the treating

physician's opinion little weight.  This Court grants Plaintiff's Motion for Judgment of Reversal

in part and remands this case to the SSA for further proceedings consistent with this Opinion.

# I. FACTUAL BACKGROUND

## A. Legal Framework

In reviewing a disability determination, the Court assesses the ALJ's treatment of the medical evidence in the administrative record, including the medical opinions of physicians that have personally examined the claimant.  When reviewing these medical opinions, the ALJ is bound by two constraints at issue here.  First, under the D.C. Circuit's treating physician rule, an ALJ must give "substantial weight" to the opinion of a claimant's treating physician, unless it is contradicted by substantial evidence.  *See Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004).  Second, when considering any medical evidence, the ALJ is obligated to build a "logical bridge" by sufficiently explaining the weight given to evidence in the record.  *See Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006).  The Court will provide a brief framework of each constraint before turning to the administrative proceedings in this particular case.

Beginning with the treating physician rule, when an ALJ chooses to reject the medical opinion of a qualified treating physician, the ALJ is required to "explain his reasons for doing so."  *See Butler*, 353 F.3d at 1003.  The ALJ can consider six factors when judging whether the treating physician's opinions are well supported: "(1) [the] length of the treating relationship and frequency of examination; (2) [the] nature and extent of the treating relationship; (3) [the] supportability [of the physician's conclusions]; (4) [the] consistency [of the physician's conclusions]; (5) [the physician's] specialization; and (6) other factors that tend to support or contradict the medical opinion."  *Id.* at 1003 n.7; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

That said, if an ALJ determines that it is appropriate to discount a treating physician's opinion, the ALJ does not need to reference each of these factors when explaining this decision. *See Grant v. Astrue*, 857 F. Supp. 2d 146, 154–55 (D.D.C. 2012) (upholding ALJ's decision to

discount treating physician's opinion even though ALJ did not explain evidence he found to be inconsistent).  Instead, the ALJ only needs to provide "good reasons" for according less than substantial weight to the treating physician's findings.  *See Turner v. Astrue*, 710 F. Supp. 2d 95, 106 (D.D.C. 2010) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  As a result, citations to contradictory evidence are sufficient explanation for an ALJ's decision to discount the medical opinion of a treating physician.  *See Grant*, 857 F. Supp. 2d at 154.

Turning to the second constraint relevant to this case, the Social Security Regulations require that the ALJ must build a "'logical bridge' from the evidence to his conclusion." *Banks v. Asture*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008) (quoting *Lane-Rauth*, 437 F. Supp. 2d at 67).  Although the reviewing court must give "considerable deference" to the ALJ's decision, it "remains obligated to ensure that any decision rests upon substantial evidence," *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994), and that the ALJ has "sufficiently explained the weight . . . given to obviously probative exhibits." *Holland v. Berryhill*, 273 F. Supp. 3d 55, 62 (D.D.C. 2017) (quoting *Lane-Rauth*, 437 F. Supp. 2d at 65).  When considering conflicting medical evidence, the ALJ is "obligated 'to explain why [he or she] either ignored or rejected contradictory evidence'" in medical opinions.  *Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017) (citing *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009)).

In building the "logical bridge," an ALJ errs when giving controlling weight to a medical opinion that is "not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Grant*, 857 F. Supp. 2d at 154 (quoting SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374118 *2 (SSA July 2, 1996)); *see also* 20 C.F.R. § 416.927(c)(2) (same).  Relatedly, when a plaintiff has a progressive disease and one state agency physician's

opinion is more recent and based on more updated information, the ALJ should give deference to that updated opinion because it has a greater logical connection to that plaintiff's current condition.  *See Fulwood v. Heckler*, 594 F. Supp. 540, 544 (D.D.C. 1984).

### B.  Administrative Proceedings

On September 30, 2014 and July 14, 2014, Mr. Matthews applied for disability insurance benefits and supplemental security income respectively.  ALJ's Decision at 1.[1]  To qualify for either disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act, a claimant must establish that he or she is disabled.  *See* 42 U.S.C. §§ 401 *et seq.*; 42 U.S.C. §§ 1381 *et seq.*  Mr. Matthews alleged that he was disabled based on numerous conditions including: cervical and lumbar spine disorders, shoulder disorders, paresthesia, affective disorder, anxiety, trauma/stressor-related disorder, personality/impulse control disorder, and a substance abuse disorder.  ALJ's Decision at 4.  Mr. Matthews's claims were denied by the Social Security Administration on December 2, 2014 and denied upon reconsideration on April 24, 2015.  *Id.* at 1.  Mr. Matthews initially alleged that his disability began on February 1, 2014, but later amended his onset date to January 1, 2016 after his claims were denied.  *Id.*

On June 4, 2015, Mr. Matthews filed a request for a hearing before an ALJ which was granted; a video hearing was held on May 5, 2017.  *Id.*  Among other things, the administrative record before the ALJ included: a Current Mental Health Status form, dated April 25, 2017, completed by Plaintiff's treating psychiatrist, Dr. T. Allen Gore, limiting him to "20 hours of a

---

[1] Magistrate Judge Robinson's Report and Recommendation adopted the ALJ's statement of the procedural history.  *See* R&R at 5.

week" of work, Administrative Record ("AR") 686, ECF Nos. 9-2 to 9-9; [2] Plaintiff's own self-evaluation, AR 328–35; numerous emergency room records, AR 507, 553, 570, 581, 593, 613; a consultative examination from Dr. Esther Pinder, dated August 15, 2013, limiting Plaintiff to "medium work," AR 140; a second consultative examination from Dr. Walter Y.K. Goo, dated October 23, 2013, also limiting Plaintiff to "medium work," AR 153; a third consultative examination from Dr. Alex Hemphill dated April 24, 2015, limiting Plaintiff to "light work," AR 104–05; and cervical spine x-rays, AR 536.  ALJ Theodore Annos issued his decision on June 30, 2017.  ALJ's Decision at 11.

An SSA ALJ uses a five-step process to determine whether an applicant is disabled under the Social Security Act.  *See Espinosa v. Colvin*, 953 F. Supp. 2d 25, 31 (D.D.C. 2013).  First, the ALJ determines whether the claimant is "engaged in substantial gainful activity."  *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)).  If the claimant is engaged in such activity, the claimant is not disabled under the Act.  If the claimant is not, the ALJ must then determine whether the claimant has a "'medically determinable physical or mental impairment' that is proven 'by medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii)).  If the ALJ finds that the claimant has such a disability at step two, then the ALJ proceeds to step three and determines whether the impairment is sufficiently severe.  *Id.*  An impairment is severe if the severity of the impairment "meets or equals an impairment listed in 20 C.F.R. Part 404."  *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)).  If the claimant meets both of these requirements, then the ALJ evaluates what the claimant's residual functional capacity is given the claimant's limitations.  *Id.*  "'Residual function capacity' is 'the most [the claimant]

---

[2] Unless otherwise indicated, citations to the administrative record reference the page numbers generated by the SSA in the bottom right of the record, not the page numbers generated by the ECF system.

can still do despite [the] limitations' caused by the impairment." *Id.* (quoting 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1)). The ALJ uses the residual functional capacity to evaluate whether the claimant is unable to occupy a prior job at step four, and, if the claimant is unable to occupy said job, then whether the claimant can "adapt[] to 'other work that exists in the national economy'" at step five. *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If a claim survives these five steps, then the claimant is eligible for benefits. *See id.*

Here, ALJ Annos found that Mr. Matthews's claims failed at steps three and four. *See* ALJ's Decision at 4–9. In his decision, the ALJ made alternative findings as to step five, indicating that even if he had determined that Mr. Matthews's impairment was severe, Mr. Matthews could nonetheless perform other jobs in the national economy. *See id.* at 9–10.

### C.  Magistrate Judge Robinson's Report and Recommendation

Mr. Matthews seeks this Court's review of the ALJ's decision in accordance with 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *See generally* Complaint ("Compl."), ECF No. 1; Answer ¶ 2, ECF No. 2. Mr. Matthews asks this Court to reverse the agency's judgment on the grounds that the decision was "arbitrary, contrary to law, and unsupported by substantial evidence." Pl.'s Mot. for J. of Reversal ("Pl.'s Mot.") at 1, ECF No. 13. Mr. Matthews's primary argument, and the only argument upon which Magistrate Judge Robinson based her Report and Recommendation, *see* R&R, is that the ALJ failed to appropriately apply the treating physician rule. *See* Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") at 4–13, ECF No. 13-2. Mr. Matthews argues that the ALJ's error in application of the treating physician rule "is reversible error standing alone," *id.* at 11, and argues that "[r]emand is required," *id.* at 13.[3] Mr.

---

[3] The Court notes that although Plaintiff has titled his motion one for reversal, his substantive arguments request remand, not automatic reversal.

Matthews makes two additional arguments: (1) that the "ALJ's analysis of [certain] State Agency medical consultants' opinions regarding Plaintiff's *physical* limitations [was] also contrary to law," *see id.* at 13–16; and (2) that the ALJ "erred by failing to consider Plaintiff's stellar work history," *id.* at 17–20.  Defendant moves for affirmance of the ALJ's decision and argues that that the ALJ appropriately applied the treating physician rule and correctly concluded that the weight of the evidence supported denying Mr. Matthews's claims.  *See* Def.'s Mot. for J. of Affirmance and Opp'n to Pl.'s Mot. ("Def.'s Mot.") at 14–26, ECF No. 14.  Defendant also addresses Mr. Matthews's two additional arguments, contending that (1) "substantial evidence supports the ALJ's evaluation of the State Agency Physicians' Opinions, where he considered them in the context of the entire record," *id.* at 26–34; and (2) "substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints, where the ALJ was not required to make a special allowance for Plaintiff's work history," *id.* at 34–39.

This Court referred the case to Magistrate Judge Robinson for full case management.  On March 11, 2020, Magistrate Judge Robinson issued a Report and Recommendation recommending that the Plaintiff's Motion for Reversal be granted, and the case be remanded for application of the treating physician rule, and findings in accordance with the rule.  *See* R&R at 7.  Because the ALJ "neither acknowledge[ed] Dr. Gore as Plaintiff's treating physician nor appl[ied] the treating physician rule," *id.* at 5; the ALJ failed to recognize that Plaintiff had been receiving treatment by a specialist (a psychiatrist, not a psychologist)[4], *id.* at 5–6; and the ALJ did not explain why he rejected the treating physician's opinion, *id.* at 6, Magistrate Judge

---

[4] The Court notes that in Plaintiff's Motion for Judgment of Reversal, Mr. Matthews also characterizes Dr. Gore as a "psychologist."  *See* Pl.'s Mem. at 7 ("[T]he ALJ gave no consideration to the fact that Dr. Gore is a *psychologist*, a specialist in the precise area in which he was offering his opinion." (emphasis added)).

Robinson concluded that "the ALJ failed to consider Dr. Gore's opinion in accordance with th[e] exacting standard" of the treating physician rule. *Id.* at 6–7.

In its opposition to the Report and Recommendation, Defendant maintains that this Court should affirm the ALJ's decision because it was supported by substantial evidence. *See generally* Def.'s Objections to the R&R ("Def.'s Obj."), ECF No. 21. Plaintiff responds by urging this Court to adopt the Report and Recommendation in full and offers an alternative ground for granting his motion. *See* Pl.'s Opp'n to Def.'s Objections ("Pl.'s Opp'n") at 1, ECF No. 22. Although the Report and Recommendation was limited to discussion of the treating physician rule, *see generally* R&R, Mr. Matthews argues that the ALJ's evaluation of physicians' opinions with respect to Mr. Matthews's physical limitations was also contrary to law. *Id.* at 3.

## II.  LEGAL STANDARDS

Two different legal standards apply to this case. The first standard, which applies to the report and recommendation of a magistrate judge, is *de novo*. The second, which applies to the factual decisions of the ALJ, is the "substantial evidence" standard. The Court analyzes each standard of review in turn.

Under Local Civil Rule 72.3(b), a party may object to a magistrate judge's proposed findings and recommendations. Local Civil Rule 72.3(b) further provides that "[t]he objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." LCvR 72.3(b). If a party objects, a district court reviews the portions of a magistrate judge's report that have been objected to *de novo*. *See* LCvR 72.3(c); *Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013). In their objections to the recommendations, the parties may not present new issues or arguments to the

district judge; "only those issues that the parties have raised in their objections to the Magistrate Judge's report will be reviewed by this court . . . Furthermore, objecting to only certain portions of the Magistrate Judge's report 'does not preserve all the objections one may have.'" *Aikens v. Shalala*, 956 F. Supp. 14, 19–20 (D.D.C. 1997) (citations omitted).  "The district judge 'may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions.'" *Platt v. District of Columbia*, 168 F. Supp. 3d 253, 259–60 (D.D.C. 2016) (quoting LCvR 72.3(c)).

As for the second standard of review, when a district court reviews an ALJ's disability findings, it must determine whether the ALJ applied the correct legal standards.  *See Butler*, 353 F.3d at 999 (citing 42 U.S.C. §§ 405(g), 1383(c)(3)).  A district court is not to reweigh the evidence and "determine . . . whether [the plaintiff] is disabled."  *Id.*  Rather, the court "assess[es] only whether the ALJ's finding . . . is based on substantial evidence."  *Id.* "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Said differently, the substantial evidence standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."  *Id.* (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)).

In this Circuit, "substantial-evidence review is highly deferential to the agency fact-finder."  *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Butler*, 353 F.3d at 999 ("The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." (citations omitted)).  Additionally, "[t]he

plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

### III.  ANALYSIS

Defendant objects to Magistrate Judge Robinson's conclusion that the ALJ failed to apply the treating physician rule on three grounds and asserts that substantial evidence supported the ALJ's decision.  *See* Def.'s Obj. at 2.  First, Defendant argues that the ALJ's treatment of Dr. Gore as Plaintiff's treating physician does not warrant remand because: (1) "the regulations do not require a specific factor-by-factor analysis in evaluating medical opinions" and (2) "the ALJ considered Dr. Gore's opinion using the factors applicable to treating physician opinions."[5]  *See id.* at 3–7.  Second, Defendant argues that this Court should uphold the ALJ's decision because, although "the ALJ did not explicitly address [a] one-hour [mental health treatment] session," *id.* at 8, he cited to records of the session in his decision, *see id.* at 7–8.  Third, the Defendant asserts that remand is not warranted based on the ALJ's characterization of Dr. Gore's qualifications as a psychologist instead of a psychiatrist as the record reflects because this argument "elevates form over substance."  *See id.* at 8–9.

---

[5] Defendant also argues that Dr. Gore was not a treating physician as defined by the regulations because the record does not reflect that Dr. Gore treated Mr. Matthews on an ongoing basis, the frequency expected for treatment of the condition.  Def.'s Obj. at 3.  However, as Plaintiff points out, Defendant has waived this argument by failing to raise it before the magistrate judge.  *See* Pl.'s Opp'n at 1–2; *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 834–35 & n.10 (D.C. Cir. 2001); *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 574 F.3d 748, 755 (D.C. Cir. 2009) ("[Appellant] has forfeited its argument by failing to raise it in its opening brief." (citing *Sw. Airlines Co. v. Transp. Sec. Admin.*, 554 F.3d 1065, 1072 (D.C. Cir. 2009))).  In light of this Court's remand of the case to the ALJ for further proceedings, Defendant may re-assert this argument to the ALJ in the first instance within the context of the ALJ's determination of what weight to give Dr. Gore's non-controlling opinion.

In response, Plaintiff argues that the Magistrate Judge correctly found that the ALJ failed to appropriately apply the treating physician rule and urges this Court to adopt the Report and Recommendation in full.  *See* Pl.'s Opp'n at 1.  Plaintiff also raised two additional arguments before the Magistrate Judge which the R&R did not address.[6]  First, Plaintiff argues that the ALJ's analysis of medical evidence relating to Plaintiff's physical limitations is contrary to law and unreasonable.  *See id.* at 3; Pl.'s Mem. at 13–16.  Second, Plaintiff argues that the ALJ erroneously weighed Plaintiff's work history in a manner contrary to agency policy.  *See* Pl.'s Mem. at 17–20.  Because the Court disagrees with the ALJ's assessment of Mr. Matthews's physical limitations, it will address this argument as well.  The Court will discuss each contention in turn.

### A.  The Weight of Dr. Gore's Opinion

The Magistrate Judge held that the ALJ failed to consider Dr. Gore's opinion in accordance with 20 C.F.R. § 404.1527(c) and the treating physician rule because the ALJ incorrectly concluded that the Plaintiff "has not undergone any mental health treatment during the period under review, except for a mandated psychological evaluation in June 2016."  ALJ's Decision at 7.  Defendant argues, contrary to the Magistrate Judge's finding, that the ALJ correctly applied the treating physician rule when assigning Dr. Gore's opinion little weight because the physician's opinion lacked explanation, failed to provide specific functional limitations, and lacked support.  Def.'s Obj. at 2, 9; Def.'s Mot. at 18.  Defendant also argues that the R&R's recommendation to remand is not warranted based on the ALJ's characterization of Plaintiff's mental health treatment and that doing so would elevate form over substance.  *See*

---

[6] Plaintiff incorporated his motion for judgment of reversal in his opposition to Defendant's objection to the R&R.  *See* Pl.'s Opp'n at 3–4 ("Plaintiff respectfully submits that the Court should . . . grant Plaintiff's Motion for Judgment of Reversal.").

Def.'s Obj. at 7–8.  First, the Court addresses the treating physician rule.  Then, because the Court concludes that the ALJ appropriately followed the treating physician rule in declining to extend controlling weight to Dr. Gore's opinion, it turns to the remaining weight given to Dr. Gore's opinion.  Ultimately, because the ALJ failed to adequately explain the weight given to Dr. Gore's opinion in light of his specialization and treating relationship with Plaintiff, this Court affirms the R&R's recommendation of remand for further proceedings.[7]

### 1. The Treating Physician Rule

Under the D.C. Circuit's treating physician rule, when "a claimant's treating physicians have great familiarity with [his] condition, their reports must be accorded substantial weight." *See Butler*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)).  Such an opinion by a treating physician is "binding on the fact-finder unless contradicted by substantial evidence." *Id.*; *see* 20 C.F.R. 404.1527(c)(2); *Poulin v. Bowen*, 817 F.2d 865, 873 (D.D.C. 1987); *Turner*, 710 F. Supp. 2d at 105–06 (holding that conflicts between physician's treatment notes and his assessment of claimant can mitigate deference ALJ must give physician).  Thus, the district court's role is not to determine whether the treating physician's opinion should have been accorded controlling weight; instead, it is to determine whether the ALJ's decision was supported by substantial evidence.  *See Butler*, 353 F.3d at 1003.

When an ALJ chooses to reject the opinion of a qualified treating physician, the ALJ is required to "explain his reasons for doing so." *Id.*  The ALJ can consider six factors when judging whether the treating physician's opinions are well supported, *Butler*, 353 F.3d at 1003

---

[7] Although this Court respectfully disagrees with the Magistrate Judge's ruling on the treating physician rule, it agrees with her ultimate resolution of remanding the case for further proceedings in light of the ALJ's insufficient explanation for awarding Dr. Gore's opinion "little weight" overall.

n.7; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); however, if an ALJ determines that it is

appropriate to discount a treating physician's opinion, the ALJ does not need to reference each of

these factors when explaining this decision, *see Grant*, 857 F. Supp. 2d at 154–55 (upholding

ALJ's decision to discount treating physician's opinion even though ALJ did not explain

evidence he found to be inconsistent).  Instead, the ALJ need only provide "good reasons" for

according less than substantial weight to the treating physician's findings.  *See Turner*, 710 F.

Supp. 2d at 106 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).  Citations to

contradictory evidence can be sufficiently explanatory.  *Compare Grant*, 857 F. Supp. 2d at 154

(concluding that "ALJ's decision noted the contrary evidence in the record, [which] satisfies the

requirement to explain the rejection of the treating physician's opinion"), *with Ward*, 246 F.

Supp. 3d at 209 (remanding because ALJ failed to reference or discuss treating physician's

medical opinion in his ruling).

     Here, the ALJ sufficiently explained his reasons for refusing to award the opinion of Dr.

Gore, Plaintiff's treating physician, controlling weight.  *See Butler*, 353 F.3d at 1003.  Dr. T.

Allen Gore of Contemporary Family Services had been treating Plaintiff for alcohol abuse and

anxiety disorders since March 2016, three months after the alleged onset date.  *See* AR 686; Pl.'s

Mem. at 6.  Dr. Gore stated that Plaintiff "is able to work up to 20 hours a week under supportive

employment due to his mental status and being under [a] doctor's care."  AR 686.  Regarding Dr.

Gore's opinion, the ALJ stated that

> Allen Gore, M.D., opined in April 2017 that the claimant would be limited to
> working 20 hours per week under supportive employment due to his mental status
> and being under doctor's care (14F/l). I assign this opinion little weight, as it is not
> supported with a detailed explanation or relevant, does not indicate the claimant's
> specific functional limitations, and is inconsistent with the medical evidence of
> record as a whole, including the findings and reported activities described in the
> preceding paragraph (see 6E; 3F/3; 5F/21; 6F/3; 8F/27, 44, 57, 67, 88; l0F/1, 5- 7,
> 11-12).

ALJ's Decision at 8.

The ALJ did sufficiently explain his reasons for according less weight to Dr. Gore's opinion. The ALJ found that Dr. Gore's opinions were not well-substantiated based on the lack of support for Dr. Gore's conclusions and the inconsistency of his opinions with the medical evidence of record as a whole. *See id.*; *Butler*, 353 F.3d at 1003 n.7 (citing 20 CFR §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6)). Therefore, the ALJ provided "good reasons" for rejecting Dr. Gore's unsupported conclusion that Plaintiff could only work 20 hours/week by referencing two of the six factors in the SSA regulations. *See Grant*, 857 F. Supp. 2d at 154–55; *Turner*, 710 F. Supp. 2d at 106.

While the ALJ failed to consider Dr. Gore's examining relationship, treatment relationship, specialization, or the fact that Dr. Gore's opinion is the only medical opinion of record relating to the adjudicated period based on actual examination of Plaintiff, an ALJ's citations to contradictory evidence alone are enough to decline to extend controlling weight to the medical opinion of a treating physician. *See Grant*, 857 F. Supp. 2d at 154. ALJ Annos found that Dr. Gore's opinion was "not supported with a detailed explanation . . . and [wa]s inconsistent with the medical evidence of record as a whole, including the [Plaintiff's] reported activities" and consistently normal psychiatric evaluations. *See* ALJ Decision at 8. Therefore, as was the case for the ALJ in *Grant* who "determined that the opinion of [Plaintiff's] treating physician was 'inconsistent with the record as whole' and was not supported by objective medical evidence," the regulations required ALJ Annos to conclude that Dr. Gore's opinion was not controlling. *See Grant*, 857 F. Supp. 2d at 154 (citing SSR 96-2p, *Giving Controlling Weight*

*to Treating Source Medical Opinions*, 1996 WL 374188 at *2 (July 2, 1996)); *see also* 20 C.F.R.
§ 416.927(c)(2) (same).[8]

The most notable contradictory evidence in the record is Dr. Gore's opinion that Plaintiff
is "able to work up to 20 hours a week under supportive employment due to his mental health
status and being under [a] doctor's care." AR 686. These findings conflict with Dr. Gore's notes
from the same day, which indicate that, although Plaintiff's mood was "depressed," he had good
or appropriate memory, judgment, appearance, behavior, and speech. *Id.* Further, the ALJ cited
considerable contradictory evidence detailing Plaintiff's prior psychiatric evaluations in the
record, which noted depression and anxiety, but otherwise described normal findings.[9]

---

[8] Although the Court agrees with the R&R's recommendation for remand, the Court finds
that the Magistrate Judge misstated the treating physician rule. 20 C.F.R. § 404.1527(c)(2); *see*
six factors listed *infra* Section I.A. The R&R found that "the ALJ failed to consider Dr. Gore's
opinion in accordance with [the six factors in the SSA Regulations]." R&R at 6. However, the
ALJ did explicitly consider two of the six factors—supportability and consistency—in declining
to extend controlling weight to the treating source's opinion. *See* ALJ's Decision at 8 (emphasis
added) ("I assign [Dr. Gore's] opinion little weight, as it is *not supported* with a detailed
explanation . . . and is *inconsistent* with the medical evidence of record as a whole, including the
findings and [the Plaintiff's] reported activities."). The ALJ then went on to cite evidence in the
record that contradicted Dr. Gore's opinion. In this Circuit, the ALJ does not err when declining
to "expressly state his reason for not applying the treating physician rule" because " not[ing] the
contradictory evidence in the record . . . supplies the reason." *Williams*, 997 F.2d at 1499.
Therefore, the ALJ's citations to contradictory evidence in the record are enough to decline to
extend controlling weight to Dr. Gore's treating source opinion.

[9] The ALJ's conflicting evidence was: (1) Plaintiff's own self-evaluation, stating that he
can do many activities of daily living, AR 328–35; (2) a regular check-up at Howard Faculty
Practice Plan noting normal psychiatric evaluations, AR 469; (3) emergency room records from
Howard University Hospital again noting normal psychiatric findings, AR 507; (4) treatment
notes for back pain at Howard University Faculty Practice Plan Orthopedics and Rehabilitative
Services again noting normal psychiatric findings, AR 515; (5) emergency room records for
chest pain at United Medical Center again noting normal psychiatric findings, AR 553; (6) same,
AR 570; (7) same, AR 583; (8) emergency room records for paresthesia at United Medical
Center again noting normal psychiatric findings, AR 593; (9) treatment notes for pneumonia
from United Medical Center Emergency Room again noting normal psychiatric findings, AR
614; (10) Dr. Gore's psychiatric evaluation of Plaintiff dated June 6, 2016 stating "[patient]
depressed on and off for past year," but otherwise normal mental health status, AR 632, 636–38;
(11) Deborah Callaway, also from Contemporary Family Services observed Plaintiff's moderate

Therefore, unlike in *Butler*, it is very possible to "discern from the record the ALJ's basis for rejecting [the treating physician's] opinions." 353 F.3d at 1002.

Conclusory and short explanations are generally insufficient to explain "why [the ALJ] has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Settles*, 121 F. Supp. 3d at 170 (quoting *Espinosa*, 953 F. Supp. 2d at 32 (D.D.C. 2013)).  However, ALJ Annos's explanation, though brief, sufficiently explains his reasons for rejecting the treating physician's opinion—"it [was] not supported with a detailed explanation or relevant, does not indicate the claimant's specific functional limitations, and is inconsistent with the medical evidence of record as a whole." ALJ's Decision at 8.  Further, unlike the ALJ in *Perkins v. Berryhill*, who provided a conclusory explanation that the treating physician's opinion was "not fully consistent with [the] treatment notes," No. 17-cv-1013, 2019 WL 2010696, at *5 (D.D.C. March 13, 2019), here, the ALJ cited to eleven instances of conflicting evidence in the record.  ALJ's Decision at 8.  Thus, the ALJ's decision to decline to extend controlling weight to Dr. Gore's opinion was supported by substantial evidence.  *See Butler*, 353 F.3d at 1003.

### 2. The ALJ's Treatment of Dr. Gore's Opinion

Although the ALJ satisfied the treating physician rule, he insufficiently explained the weight he gave to Dr. Gore's opinion.  The Court finds that the ALJ failed to consider Dr. Gore's

---

phobia, severe racing thoughts, moderate depression, and moderate flat affect, AR 642–43. Because Plaintiff cites to opposing medical evidence, *see* Pl.'s Mot at 8–9, the diverse array of psychological and psychiatric evidence in this opinion "create[s] a situation 'where conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled.'" *Turner*, 710 F. Supp. 2d at 107 (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Therefore, "[i]n such situations, 'the responsibility for that decision falls on the Commissioner (or his designate, the ALJ).'" *Id.* (quoting *Walker*, 834 F.2d at 640).  Therefore, it was reasonable for the ALJ to conclude that the treating physician's opinion was "inconsistent with the medical evidence of record as a whole." *See* ALJ's Decision at 8.

opinion in accordance with the regulations.  The ALJ did not adequately explain Dr. Gore's

opinion in the context of: (1) Dr. Gore's specialization in psychiatry and (2) Dr. Gore's treating

relationship with Plaintiff.  *See* 20 C.F.R. § 416.927(c).  Therefore, the Court agrees with the

Magistrate Judge's recommendation that the ALJ failed to adequately explain his decision to

discount Dr. Gore's opinion.  *See* R&R at 6–7.

Under the regulations, if an ALJ declines to extend controlling weight to a treating

physician's opinion, he must still consider the opinion in the context of the physician's

specialization and treating relationship.  *See* 20 C.F.R. § 416.927(c).

> Generally, [the ALJ] give[s] more weight to medical opinions from [a plaintiff's]
> treating sources, since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a plaintiff's] medical
> impairment(s) and may bring a unique perspective to the medical evidence that
> cannot be obtained from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or brief
> hospitalizations.

*Id.* § 416.927(c)(2).  First, "the more knowledge a treating source has about [a plaintiff's]

impairment(s) the more weight [an ALJ] will give to the source's medical opinion."  *Id.* at

§ 416.927(c)(2)(ii).  Therefore, an ALJ will "generally give more weight to the medical opinion

of a specialist about medical issues related to his or her area of specialty than to the medical

opinion of a source who is not a specialist."  *Id.* at § 416.927(c)(5).  Second, "the longer a

treating source has treated [a plaintiff] and the more times [a plaintiff] has been seen by a

treating source, the more weight [an ALJ] will give to the source's medical opinion."  *Id.* at

§ 416.927(c)(2)(i).

Here, the ALJ failed to consider Dr. Gore's opinion in the context of Dr. Gore's

specialization and treating relationship.  First, as Plaintiff's psychiatrist, Dr. Gore is most able to

give a longitudinal picture of Plaintiff's impairments and provides a unique perspective that the

ALJ cannot obtain from consultative examinations or brief hospitalizations.  *Id.* § 416.927(c)(2).

Instead of considering Dr. Gore's opinion in light of his unique knowledge and specialty, the

ALJ used reports from consultative examinations and brief hospitalizations to discount Dr.

Gore's opinion and award it "little weight" altogether.  ALJ's Decision at 8.  The regulations

suggest that this is improper.  They provide the example that if a plaintiff's eye doctor notices

that the plaintiff has complained about "neck pain during [] eye examinations, [the ALJ] will

consider the eye doctor's medical opinion with respect to [plaintiff's] neck pain, but [] will give

it less weight than that of another physician who has treated [] the neck pain."  20 C.F.R.

§ 416.927(c)(2)(ii).  Here, the ALJ did the reverse.  The ALJ failed to sufficiently explain his

choice to award "little weight" to Dr. Gore's specialist assessment of Plaintiff's psychiatric

conditions, while, at the same time, crediting emergency room and orthopedic physicians' one-

time assessments of Plaintiff's "normal" psychiatric findings while they treated Plaintiff for

unrelated physical ailments.  *See* n.9 *infra*.  The ALJ's failure to explain his reasoning is

especially puzzling because Dr. Gore specializes in psychiatry.  Therefore, the ALJ should have

given Dr. Gore's opinion greater weight than the opinions of emergency room and orthopedic

physicians, because Dr. Gore actually treated Plaintiff for his depression, anxiety, and

personality disorder.  *See* 20 C.F.R. §416.927(c)(2)(ii).[10]

---

[10] The R&R recommends that the ALJ's decision be overturned, in part, because the ALJ incorrectly characterized Dr. Gore's examination of Plaintiff as a "*psychological* examination." ALJ's Decision at 7 (emphasis added).  In fact, Dr. Gore is a psychiatrist and performed *psychiatric* evaluations of Plaintiff during the relevant period.  AR 686.  A psychiatrist is a medical doctor, whereas a psychologist holds a non-medical doctorate degree, usually a PhD or PsyD.  *See* Ralph Ryback, M.D., *Psychiatrist vs. Psychologist*, Psychology Today (Jan. 4, 2016), https://www.psychologytoday.com/us/blog/the-truisms-wellness/201601/psychiatrist-vs-psychologist.  While the ALJ used incorrect terminology to describe Dr. Gore's report, the ALJ recognized the key difference, as evidenced by his reference to Dr. Gore as "Allen Gore, *M.D.*" ALJ's Decision at 8 (emphasis added).

Second, the ALJ insufficiently accounted for the frequency of Dr. Gore's examinations of Plaintiff in the context of his treating relationship.  The ALJ incorrectly stated that Plaintiff "has not undergone any mental health treatment during the period under review other than a mandated psychological evaluation in June 2016."  ALJ's Decision at 7.  While the record with regard to Plaintiff's mental health treatment is sparse, Dr. Gore's April 2017 evaluation of Plaintiff stated that he "started outpatient services in 2016 and currently receives services, medication management, case management and therapy."  AR 686.  Additionally, Plaintiff testified at the hearing that he typically sees his psychiatrist every two weeks.  *See* AR 38.  However, the only mental health treatment notes in the record are from March 2016, June 2016, and October 2016.[11]  Therefore, further factual development on remand concerning Plaintiff's mental health treatment is needed to determine the appropriate weight to give Dr. Gore's opinion based on the length of treatment and how many times Dr. Gore has seen Plaintiff.  *See* 20 C.F.R. § 416.927(c)(2)(i); *Poulin*, 817 F.2d at 874 (instructing that "[t]he presence of a mental disorder should be documented primarily on the basis of reports from . . . psychiatrists").  Thus, remand is appropriate, because "the [C]ourt cannot determine the ALJ's rationale" for completely discounting Dr. Gore's opinion "without further findings or clearer explanation for the decision." *Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010).

### B.  Mr. Matthews's Physical Limitations[12]

Next, Plaintiff argues that the ALJ erred when analyzing the medical evidence regarding his physical condition.  *See* Pl.'s Mem. at 13–16.  The only medical opinions in the record

---

[11] The record also contains mental health evaluations from before the relevant period. *See* AR 457 (Family Matters of Greater Washington on March 21, 2013).

[12] Plaintiff first raised the physical limitations issue in his Motion, *see* Pl.'s Mem. at 13–14, and raised it again in his Opposition, *see* Pl.'s Opp'n at 3.  Although the R&R addressed only Plaintiff's concerns regarding the treating physician rule, *see generally* R&R, this Court will also

regarding Plaintiff's physical condition were those of state agency medical consultants. *See id.* at 13. The state agency medical opinions at issue here are those of Dr. Esther Pinder, dated August 15, 2013; Dr. Walter Goo, dated October 23, 2013; and Dr. Alex Hemphill, dated April 24, 2015.[13] Plaintiff argues that the ALJ incorrectly determined his residual functional capacity to perform "medium work" by according greatest weight to 2013 medical opinions when the only issues related to January 2016 and after. *See* Pl.'s Mem. at 13–14.[14] Defendant, in contrast, argues that substantial evidence supports the ALJ's decision to assign relatively less weight to

---

consider Plaintiff's argument regarding the ALJ's evaluation of his physical limitations. "The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Even though the R&R did not address Plaintiff's physical limitations argument, Pl.'s Mem. at 13–16, and, while Plaintiff did not specifically "object[] to" "the magistrate judge's disposition," Plaintiff did raise this issue in pleadings responsive to the R&R. *See Aikens v. Shalala*, 956 F. Supp. 14, 19 (D.D.C. 1997) (district courts can consider issues that parties raised in their responses to the R&R). Therefore, the Court will review the issue.

[13] The record also contains an additional opinion regarding Plaintiff's physical condition: the report of Dr. Veronica Bedeau, dated December 2, 2014. *See* AR 80–81. However, Dr. Bedeau's opinion is not at issue in these proceedings because she "opined that the claimant's physical impairments were non-severe. [The ALJ] assign[ed] this opinion little weight, as it is not consistent with the medical evidence of record as a whole showing that the claimant does have severe physical impairments resulting in functional limitations." *See* ALJ Decision at 7. Neither party disputes the ALJ's finding with respect to Dr. Bedeau's opinion.

[14] At steps four and five of the disability determination, the ALJ must engage in a residual functional capacity ("RFC") analysis. The RFC analysis involves an inquiry into the medical evidence (1) to determine the claimant's ability to return to past work and (2) to assess whether future employment of any variety is possible. *See* 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96–8p: Policy Interpretation Ruling—Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996). When performing the RFC assessment, SSR 96–8p requires that the ALJ assess the claimant's ability to perform sustained "work-related physical and mental activities," SSR 96–8p, 1996 WL 374184, at *2, by examining his exertional and non-exertional capacities, such as sitting, walking, hearing, and tolerance for temperature extremes. *Id.* at *5–6. The ALJ is required to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and to describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7; *see also Lane-Rauth*, 437 F. Supp. 2d at 67.

Dr. Hemphill's April 2015 opinion, namely that 2013 medical opinions by Doctors Pinder and Goo were more consistent with the rest of the medical evidence.  *See* Def.'s Mot. at 31–32.  The Court agrees with Mr. Matthews that the ALJ failed to sufficiently explain his decision to weigh the opinions of Doctors Pinder and Goo more heavily than Dr. Hemphill's updated opinion when reviewing Plaintiff's degenerative condition.

When determining whether a claimant is disabled, the Social Security rulings instruct the ALJ to provide a "narrative discussion" that

> contain[s] a thorough . . . analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; . . . a resolution of any inconsistencies in the evidence as a whole; and . . . a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

SSR 96–8p, 1996 WL 374184, at *7.  "Stated another way, SSR 96–8p requires that the ALJ must build a 'logical bridge' from the evidence to his conclusion."  *Banks*, 537 F.Supp.2d at 84 (quoting *Lane-Rauth*, 437 F. Supp. 2d at 67).

Although reviewing courts must give "considerable deference" to the ALJ's decision, courts "remain[] obligated to ensure that any decision rests upon substantial evidence," *Davis*, 862 F. Supp. at 4, and that the ALJ has "sufficiently explained the weight . . . given to obviously probative exhibits,"  *see Holland*, 273 F. Supp. 3d at 62 (quoting *Lane-Rauth*, 437 F. Supp. 2d at 65).  When considering conflicting medical evidence, the ALJ is "obligated 'to explain why [he or she] either ignored or rejected contradictory evidence'" in medical opinions.  *Ward*, 246 F. Supp. 3d at 210 (citing *Pinkney*, 675 F. Supp. 2d at 18).  It is insufficient explanation when an ALJ awards "great weight" to a medical opinion because it was "'consistent' with record evidence" if that opinion conflicts with other medical sources and the plaintiff's testimony.  *See Higgins v. Saul*, No. 16-cv-27, 2019 WL 4418681, at *15 (holding that "ALJ inadequately explained her reliance on the state agency consultants' opinions" because she "improperly

rejected the plaintiff's and [other doctor's] statements and did not explicitly address other evidence in the record that is inconsistent with state agency consultants' opinions.").

Further, when a plaintiff has a progressive disease and one state agency physician's opinion is more recent and based on more updated information, the ALJ should give deference to that updated opinion. *See Fulwood*, 594 F. Supp. at 544 (holding that ALJ improperly gave older opinion on plaintiff's progressive asbestosis more weight because updated opinion that was given three years later had "far greater relevance to [p]laintiff's actual and total condition"); *McLaurin v. Colvin*, 121 F. Supp. 3d 134, 141–42 (D.D.C. 2015) (upholding ALJ's decision to give greater weight to more recent medical opinion because it was consistent with other evidence in the record). Additionally, when considering the evidence, the ALJ errs when he or she gives controlling weight to a medical opinion that is "'not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Grant*, 857 F. Supp. 2d at 154 (quoting SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374118 *2 (SSA July 2, 1996) (rejecting medical opinion in part because "there had been no laboratory tests performed in the previous four years that supported [the] opinion")).

Here, the ALJ failed to provide a "narrative discussion" when resolving "inconsistencies in the evidence as a whole," SSR 96–8p, 1996 WL 374184, at *7, regarding the opinions of Doctors Pinder and Goo that Plaintiff could perform "medium work" with Dr. Hemphill's more recent opinion that Plaintiff could only perform "light work," ALJ Decision at 7. Because Dr. Hemphill's opinion that Plaintiff could only perform "light work," AR 103, contradicted the opinions of Doctors Pinder and Goo that Plaintiff could perform "medium work," AR 140, 153,

the ALJ was "obligated to explain why [he] rejected contradictory evidence," *Ward*, 246 F.

Supp. 3d at 210 (internal quotations omitted).

The ALJ explained his rejection of Dr. Hemphill's opinion by stating that it was "not

consistent with the objective findings and the claimant's work activities described in the

preceding paragraph." ALJ Decision at 7. Similarly, the ALJ awarded "great weight" to the

medical opinions of Doctors Pinder and Goo because "it is consistent with the record as a whole,

including the objective findings and the claimant's work activities described above." ALJ's

Decision at 7.[15] However, like the ALJ in *Higgins* who "inadequately explained her reliance on

the state agency consultants' opinions" by ignoring the plaintiff's and other doctor's statements,

as well as objective evidence in the record, 2019 WL 4418681, at *15, here, the ALJ

inadequately explained his reliance on the 2013 state agency opinions by failing to account for

(1) Plaintiff's testimony that his work involved lifting only 15–20 lbs. (i.e., not up to 50 lbs., as is

required for medium work), AR 40, (2) Dr. Hemphill's 2015 examination of Plaintiff, limiting

him to "light work," AR 103, and (3) updated medical records, including "the recent 1/15/16

exam when muscle spasm, impaired gait and positive [straight leg raises] were noted," *id.*, and x-

rays showing "multilevel degenerative disc disease with moderate narrowing of discs," AR 536.

---

[15] The "work activities described above" references Plaintiff's past part-time warehouse work from approximately August 2014 to January 2016 (the alleged onset date). AR 40–42. The Vocational Expert classified this position as "medium work." AR 60. However, the regulations classify medium work as lifting up to 50 lbs. at a time with frequent lifting of objects weighing up to 25 lbs., 20 C.F.R. § 404.1567(c), and Plaintiff testified that he lifted only 15-20 lbs., AR 42. Plaintiff also worked at Giant Grocery Store for three weeks in 2016 but stopped because of his health problems. AR 42–43. Three weeks of attempted work following the alleged onset date does not imply that Plaintiff is capable of substantial gainful employment. SSR 96-8p (defining substantial gainful employment as "8 hours a day, 5 days a week, or an equivalent work schedule"); *Roth v. Sullivan*, No. 90-cv-00581, 1990 WL 183584, at *2 (D.D.C. Nov. 8, 1990) (quoting *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978) ("The ability . . . to work only on an intermittent basis is not the ability to engage in 'substantial gainful activity.'")).

Further, like the claimant in *Fulwood*, Plaintiff's "degenerative disc disease," AR 536, is a progressive disease, meaning the disease gets worse over time, 594 F. Supp. at 544.  Therefore, Dr. Hemphill's more recent opinion, from almost two years later, limiting Plaintiff to "light work," AR 103, has "far greater relevance to Plaintiff's actual and total condition" like the medical opinion in *Fulwood* from three years later, 594 F. Supp at 544.  Thus, the ALJ insufficiently explained his decision to award "great weight" to the 2013 opinions of Doctors Pinder and Goo despite their not having observed the Plaintiff's "antalgic stance" and gait, "limited range of motion," "increased lordosis" of the spine, "right-sided muscle spasms," "restricted" flexion and rotation, and "positive straight leg" tests on March 19, 2015.  Not only did Dr. Hemphill have the benefit of updated observations when drafting his opinion, his conclusions are "well supported by medically acceptable clinical and laboratory diagnostic techniques," *Grant*, 857 F. Supp. 2d at 154, in the form of cervical spine x-rays taken just two months after Dr. Hemphill's opinion, on June 24, 2015, showing "multilevel degenerative disc disease with moderate narrowing of the disc[s]."  AR 536.  Conflicting evidence can create situations where reasonable minds differ and in such cases the ALJ's decision should stand. *Turner*, 710 F. Supp. 2d at 107.  Under these circumstances, however, it was unreasonable for the ALJ to afford "little weight" to Dr. Hemphill's updated and corroborated opinion, at least without further explanation.  *See* ALJ Decision at 7.

Although outdated medical records are not "stale," an ALJ errs when failing to explain his or her reasoning for crediting an older medical opinion, while dismissing an updated one. *See Ward*, 246 F. Supp. 3d at 210 (remanding where ALJ insufficiently explained decision to afford "great weight" to outdated state agency physician's opinion over more recent opinion); *Higgins*, 2019 WL 4418681, at *15.  Like the ALJ in *Higgins*, the ALJ here did not adequately

24

explain his reliance on the older opinions, given the existence of updated evidence in the record contradicting those opinions. 2019 WL 4418681, at *15. "The fact that additional medical evidence was added to the record after [doctors'] opinions renders them no less valid as of the dates they were written" because the regulations only require that the ALJ's decisions are supported by substantial evidence. *See Goodman v. Colvin*, 233 F. Supp. 3d 88, 106 (D.D.C. 2017) (quoting *Etheridge v. Comm'r of Soc. Sec.*, No. JKB-15-697, 2015 WL 6769116, at *2 (D. Md. Oct. 30, 2015)). However, "it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given certain probative items of evidence." *Turner*, 710 F. Supp. 2d at 105; *Cobb v. Astrue*, 770 F. Supp. 2d 165, 171 (D.D.C. 2011) (reversing ALJ's "extremely generic and abstract" declaration that plaintiff could perform "light work"). The ALJ's decision to accord "great weight" to the opinion furthest removed from Plaintiff's current condition was reversible error because he insufficiently explained the weight given to updated medical evidence that supported Dr. Hemphill's more recent opinion concerning a degenerative condition, thereby failing to build a "logical bridge."[16] Therefore, on remand, further explanation is needed regarding the ALJ's decision to award the 2013 opinions of Doctors Pinder and Goo "great weight" while awarding Dr. Hemphill's 2015 opinion "little weight." ALJ's Decision at 7.[17]

---

[16] The ALJ's failure to explain the weight given to the state agency medical opinions may be outcome-determinative. Based on the Plaintiff's "advanced age" and "history of unskilled work," if the ALJ found Plaintiff to be limited to "light work"—as opposed to "medium work"—the Social Security Administration's Grid Rules may perhaps require a finding of "Disabled." 20 C.F.R. § 404, Subpt. P, App. 2, 202.04, Table 2.

[17] An additional matter may also be considered on remand. In his Motion for Judgment of Reversal, Plaintiff raises the issue that the ALJ failed to consider Plaintiff's "stellar work history" in his credibility determination. Pl.'s Mem. at 17–20. Because neither party raised the issue of the ALJ's credibility determination in their responses to the R&R, this Court will not reevaluate the ALJ's treatment of Plaintiff's work history as it relates to the credibility determination. The parties may address this topic on remand.

### V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment of Reversal (ECF No. 13) is

**GRANTED** and Defendant's Motion for Judgment of Affirmance (ECF No. 14) is **DENIED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 10, 2020                                    RUDOLPH CONTRERAS

                                                      United States District Judge